We'll hear an argument next in Case 16-1027, Collins v. Virginia. Mr. Fitzgerald. Thank you, Mr. Chief Justice, and may it please the Court. The warrant requirement for the home and curtilage cannot be overthrown by the automobile exception. Under the Commonwealth's argument, on probable cause alone, an officer may search a vehicle anywhere that he finds it and may go anywhere that he needs to in order to access that vehicle. That rule cannot survive foundational Fourth Amendment principles. Searches of the home and curtilage without a warrant are presumptively unreasonable, as this Court has often recognized. So the rule we ask this Court to adopt is that the automobile exception does not apply to a vehicle found in the curtilage of the home. Suppose the police have probable cause to believe that the vehicle is stolen, and they even get a warrant to inspect the vehicle, but the vehicle is parked in this port. Do they need a warrant to go get the car for which they have a warrant? Well, Your Honor, the warrant would specify the place to be searched for the car. And so commonly a warrant would say, for instance, the dwelling and curtilage to look for this motorcycle. So the warrant that authorizes the search of the motorcycle would, by its terms, authorize the intrusion into the curtilage. But what if it didn't? So they have a warrant here, let's say, to search for – they have probable cause to search this thing covered by a tarp. They have a warrant to search this motorcycle because it's been involved in criminal activity. They want to get the vehicle identification number from it, and they see it. Let's say it's parked 2 feet from the curb, but arguably – or it's parked where it is here. Maybe in the curtilage, maybe not in the curtilage. That warrant would be insufficient. Well, Your Honor, the Fourth Amendment, by its terms, requires a warrant to specify the place to be searched. So if they've seen the motorcycle in that spot and they get a warrant, the warrant would say, this house on Delmead Avenue may have included the picture, and it would, by its terms, authorize the access to that. I mean, this is my question about your argument based on the curtilage. We ask whether a search within or outside the curtilage in order to determine whether the Fourth Amendment applies at all, but that's not really the question here, because there is probable cause, and there is the motor vehicle exception to the warrant requirement. So the issue is not whether there was a search. Yes, there was a search. And yes, you know, if it was the curtilage, then there was – there was an intrusion on the protected area, but the warrant – the motor vehicle exception to the warrant requirement, I take it, is based on two things. One is the risk that the vehicle is going to be moved during the time when the warrant is sought. And second is a consideration on the other side of the risk that if there's not a warrant, the police will be wrong about probable cause and the degree of intrusion on property – on legitimate property interests that occur in that situation. It's a balancing. It's not a consideration of whether it's on the curtilage or not. And it's hard to see why the balance is any different here than it would be if this motorcycle had been parked on the street. The risk that it will be moved seems to be almost exactly the same. And what is the additional invasion of privacy? The invasion of privacy that's involved in walking a few feet up a driveway, and the home is not even Mr. Byrd's home. Why does the balance come out different here? Well, Your Honor, so here's the way that I think about that. If you're looking at the terms that support the automobile exception, you have ready mobility and you have the lessened expectation of privacy. But the curtilage and the home are essentially more important concerns than that. So, for instance, if I had a fistful of cocaine and I'm out in public, cocaine is extremely readily mobile. There's nothing that is easier to dispose of than a fistful of cocaine. If I've got a sink, it can be gone in seconds. So it's extremely readily mobile. Nor in the cocaine itself is there any expectation of privacy. It's illegal to possess it already. But if I'm standing in, say, my living room or in my garage with a fistful of cocaine, the court would require a warrant for the police to come to that address and look for that and get me. So yeah, no, I think the privacy interest would be quite different if this was in the house or if it was in the garage. But this is not in either of those places. It's in a spot that's visible from the street, right? It's visible from the street from directly at the end of the driveway, yes, Your  Honor. It is obscured from any distance in either direction by the brick walls that surround where this motorcycle was on three sides, one side being the house. So the motorcycle here is 5 feet from the side of the house. And to the extent that curtilage is at issue, curtilage has been waived by the Commonwealth by not arguing it below. And this is a clear case for curtilage given the distance from the house. Sotomayor How much does your argument depend on us viewing this as two things? One, a trespass on private property, the curtilage, and then a search within that private space. Does your argument hinge on that distinction? Fisher Well, I think we make that distinction because it's important just to make sense of the Fourth Amendment to think about it step by step. And there are two searches here. The first is the intrusion into the curtilage under Jardines, which is clearly a search outside of any implied license. And the second is the removal of the cover from the motorcycle, which is similar to opening a container to find a vehicle inside or perhaps opening the door to a car or removing a cover from a car. Alito So if this motorcycle were parked on the street and it was covered by a tarp, you would say that the motor vehicle exception doesn't apply because it's covered by a tarp? Fisher No, Your Honor. If it were parked on the street, then the automobile exception would apply. Alito So what's the relevance of the tarp? Fisher The relevance of the tarp is essentially that there is a – there is some expectation of privacy in a tarp, particularly placed within the curtilage of the home. So the location of the motorcycle is very important here. Sotomayor So what difference does it make that the tarp was there? Fisher The tarp perhaps makes it particularly clear that the officer was undergoing a search, not just, say, walking where he could have said, oh, this is almost on the  Sotomayor Counsel, let's change the hypothetical. Is there still a violation under your theory of law if the motorcycle was in plain view in the curtilage and he just walked onto the curtilage and what – I don't know where the bin is on the motorcycle, by the way. In a car, it's within the car, not outside the car, so you have to open the car door. But let's assume that you have to move something in the motorcycle. I don't know. Do you? Fisher I don't think you would have to move something on the motorcycle. And so – Sotomayor Let's just assume that. No top on it. Does your argument still stand? Fisher Yes, Your Honor. So if the motorcycle is where the motorcycle is in this case, but there is no cover on it, there is a Fourth Amendment violation, and that is the problem. Breyer Why? Because, I mean, suppose the policeman is standing on the sidewalk. He – the window of the house is quite close, and there inside he sees a huge pile of cocaine. Okay. I thought, but perhaps I have got it mixed up, I thought that seeing something that is an illegal substance that can be easily disposed of in about three seconds would, in fact, justify, create an exigent circumstance under which the policeman could enter. Am I wrong about that? Fisher Close, Your Honor. So if – Breyer What is the law there? Fisher If an officer standing on the sidewalk looks into the window of a house and sees a pile of drugs through the window, that creates probable cause that would permit the officer to get a warrant to go into the house. Breyer But if he doesn't get a warrant, then they throw it all down the sink. And, of course, there is nothing by the time he comes back. I mean, I thought that was an example of an exigent circumstance, but you know the area of this law better than I do, I guess, and that isn't. Fisher So it's not impossible that there would be an exigent circumstance there. Breyer Well, no. I've given you the facts. The facts are there is a big pile of cocaine right there, and there is somebody wandering around inside, and can't he – I don't know. What is an exigent circumstance if it isn't that? Fisher It's particularly important to that hypothetical that there is someone wandering around inside. Breyer Okay. Fine. Fine. He has reason to think there is somebody in the house. Fisher Right. So it's certainly possible that an exigency could be created. Breyer All right. Now, if that's an exigent circumstance and you happen to see, now changing the situation, you happen to see a motorcycle, which is a rather unusual shape and happens to look stolen, you can't go and go look at it. You have to go get a warrant. Of course, they drive away in the meantime. But nonetheless, you're there by yourself, no other policemen. It's in the window, okay. It's like the cocaine. Or it's in the driveway. Why can't you? Fisher So just to be clear, in this case, the Supreme Court of Virginia steered away from exigency and said, no, we're not going to. Breyer I know that. That's why I thought the TARP made a difference. And that's why I thought this was a case about a TARP, oddly enough, and not a case about whether you have an exigent circumstance. Fisher It is not a case about an exigent circumstance. Breyer You just told me I'm wrong. Fisher This is not an exigency case. And the Supreme Court of Virginia specifically said that it's a case about an exigent circumstance. Breyer No, no. I know that. What I'm trying to get at is I suddenly thought, I don't understand this case because you said the circumstance is the same without a TARP. That's what confused me. That's why I asked the question. Fisher So the officer testified that when he arrived at the property, there was no one home. And the exigency, the relevant exigency, were there one here, would be eminent destruction of evidence. And he testified that no one was there. The motorcycle is under a TARP. He has a picture or a cover. He has a picture of the motorcycle in exactly the same place from Facebook, which he must know has taken at least a few hours earlier because he's been with the person who he believes owns the motorcycle in the meantime. So there's no obvious exigency here so much. Kagan I'm sorry. Did you? Fisher There's no obvious exigency here, and that would be an issue for remand in this case. Kagan Can I go back to the exchange that you had with Justice Alito? When you gave your hypothetical about the drugs and he said, well, that would be different, it's very different in a home, but here you have the motorcycle parked out in the open on the driveway in this enclosure where you can see it from the street. And I guess this is the question I want to ask you. If there is that difference, like in a home, you better have a warrant. But here it's out on the street, but in the curtilage, in the curtilage, and that's established. Fisher Yes. Kagan You know, it's not disputed here. How far are we committed by Jardines to treat the curtilage exactly as we would the home? That seems to me to be important given the, I think, the things that you and Justice Alito agreed on. So how far do we say, look, what Jardines said or what we've said in other cases is we have to treat the curtilage exactly as we would the home, even though you can actually see the motorcycle on the curtilage? Fisher Yes, Your Honor. So in Jardines the Court said, quote, the curtilage is protected as part of the home itself for Fourth Amendment purposes. And even though the Court in Jardines, and at the time the Court was quoting Oliver, the 1984 case that recognized open fields and said the same thing. And the idea that curtilage is protected as part of the home itself is important. And I think the problem is whose curtilage it is. Here we're told that there was a close relationship between the defendant and the homeowner. But suppose there weren't that close relationship. Suppose it was a brand-new girlfriend and he never stayed overnight. He was hopeful, but he hadn't. And it's the same. It's parked the same way. Fisher So you may, Your Honor, be ‑‑ it sounds like you are describing a difficult case of Fourth Amendment standing or right to object. This Court has very clearly said in Minnesota v. Olson that the overnight guest has the right to object, and that's the status in this case at minimum. I mean, really, it's his family. It's the mother of his child. His child who lives there, and she is the lessee. He spends several nights a week there. On the other end of the spectrum, Minnesota v. Carter, being in a place for a couple of hours just to do business would not create a right to object. So to the extent that connection to the property, connection to the curtilage would be treated the same way as connection to the house. Alito Did ‑‑ coming back to Justice ‑‑ to the question, did we say in Jardines that the curtilage is to be treated the same as the house for all Fourth Amendment purposes? I thought the issue in Jardines was whether ‑‑ was whether officers who did not have probable cause were permitted to walk up to the front of the house, at which point they acquired probable cause. Well, yes, Your Honor. So Jardines identified a search, and it identified a search of the home based on actions taken exclusively in the curtilage of the home, and it ‑‑ the majority essentially said, as I read it, that the officers acted beyond the scope of the implied license when they brought a drug dog and they spent a few minutes in the curtilage sniffing around. That's not what there would be an implied license to do, which essentially is just a knock and talk. And so it's a search of the curtilage. And the Court stopped there. This Court stopped there, but of course it was affirming the Florida Supreme Court, which had thrown out the search for lack of a warrant based on the protection of the curtilage. Sotomayor, we permit the police to seize items in plain view in a home. They get a search warrant for the home. They see an item that they have probable cause to believe is incriminating evidence. They can seize it. Justice Breyer said exigent circumstances permit the police to seize items. I think the assumption, or not the assumption, the premise of all of those cases is that the police are there legitimately. If you have a warrant, you are permitted to be there. In Jardines, you couldn't seize the incriminating evidence swapping from the house because you didn't have a right to be in the curtilage. And so isn't there a difference when you are in the street, as these police officers were, they have a right to be on the street. They have a right to look at whatever is visible, and they could see the motorcycle from there. So is this a plain view case? Is this an exigent circumstance case? That's why I thought that Justice Breyer was asking whether the search of the tarp was part of this, because was this in plain view in essence? As I understood it, they weren't sure it was the same motorcycle. They thought the wheel was the same, but I'm not sure why they needed that if they knew the motorcycle was stolen. Or did they not know yet that it was stolen? I don't remember now. The record is unclear, and we would not, we don't believe that the officer thought the motorcycle was stolen. He was looking for the motorcycle that he needed. But how do you address the way I'm looking at this, which is the police are standing there, they see something and have probable cause to believe that it's incriminating evidence, how is that different than being inside the home with a warrant? And again, does, I'm not sure I see the difference, although the tarp is a difference, because they are lifting, they are searching something else besides the motorcycle. So, Your Honor, this is not a plain view case, because in Horton v. California, the court said in order for plain view to apply to allow the seizure of the thing, the officer must have a right of access to the thing itself. So there is no right of access, there is no implied license to go into the curtilage to look for evidence that you have seen. And so seeing the motorcycle from the street in this case is just like seeing the motorcycle or seeing drugs through the window of a house. Do you dispute the fact that they had probable cause to believe that the thing that they saw covered by the tarp was the motorcycle they were looking for? We do not dispute that. Okay. And so ultimately here, this is a fairly straightforward case, I think. The motorcycle is 5 feet. Breyer. You don't dispute, in other words, you, in your view, you agree that the policeman standing on the sidewalk knows that that item covered by, or at least has probable cause, covered by the tarp is the possibly stolen motorcycle. You agree with that? He has probable cause to believe that is the motorcycle that eluded him in traffic that he was looking for. Of course, there could be other things under the tarp as well as the motorcycle. So he didn't really have to lift the tarp at all? Well, he wanted to lift the tarp to be sure. But that's his decision. He didn't have to. I mean, in your view, he could have just grabbed the whole thing, tarp and all, if he had access. Well, he didn't have access, and I think it would be. I know that, but I'm saying if he had access to it, if they had said, please, come to my curtilage. All right. Now, if that had given him access, he could have just grabbed the whole thing, tarp and all. Is your view, I'm just saying, do you agree, I thought from what you just said, I was surprised, but I thought that now you do agree that that is the case. He could just grab the whole thing. Do you agree with that or don't you agree with that? No, Your Honor. So he is investigating the crime of eluding him in traffic. Ultimately, that is a crime committed by the driver. From a stolen vehicle. I think we've gotten a little confused about that. The police were looking for him because he eluded them by speeding away. The evidence of the theft comes when they see the number, after they lift the tarp. Yes, Your Honor. And now, there is some disagreement in the record about that, but the officer testified he went to the house solely to look for the motorcycle that had eluded  him. He was asked, was the motorcycle, did you think the motorcycle was contraband? And he said no. So he was looking into the eluding, and when he ran the VIN number, he found that it was stolen. So he didn't know this was stolen property yet. The VIN number gave, this is like Jardine's, the VIN number gave him that information? That is what he stated, yes. No, it's not like Jardine's. But you could see under the tarp, right, some identifying characteristics and the extension of the wheel that allowed it to go 140 miles an hour and the color scheme and all that? You couldn't see the color scheme, but you could see the basis for the probable cause is he has the Facebook picture that shows a motorcycle not under a tarp. And then he gets to the house, and it's under a cover, but it's in the same spot. It's the same. But it's probable cause to arrest the driver. It's not probable cause to arrest the motorcycle. It's the driver that he was charging with elusive driving or whatever, dangerous driving. It is a police investigation in which he's ultimately trying to find the driver first by verifying that he's found the motorcycle. You can't seize, on this basis of the same probable cause, you can't seize the motorcycle? Putting aside the curtilage question. You have probable cause to believe that this person was driving that type of motorcycle. It's an honest question. I don't know the answer. Don't you have probable cause to then seize the instrumentality of the crime? I think that you do, Your Honor. But the curtilage, I guess we can't really set that aside. Yes. And maybe this is the same question Justice Breyer was asking. But let's say the motorcycle was on the, covered with a tarp, on the side, not the sidewalk, the little path to go to the door. In other words, a place where he did have a license to go, right? He said I'm just going to go knock and talk, and it's right there. Would he have? No. He couldn't seize that, even with probable cause? That is outside the implied license of his ability to go and knock and talk at the door of that residence, Your Honor. So he can't stop to perform additional searches or seizures. It's not an additional search. In other words, you have a license to go to the door and knock, but you can't look at anything in the way. You sort of have to block it off. No. You have the right to use your eyes, but you don't have the right to go beyond what a reasonably respectful person approaching the door would do, and stopping to examine or seize a motorcycle would be outside of that implied license. Now, of course, here the motorcycle is not even on the path to the front door. He's not going to the front door. He testified he was not knocking and talking. He walked up solely to take the cover off to see if this was the motorcycle that he had probable cause to think that it was. Alito, he had probable cause. I thought you admitted he had probable cause to believe that the thing covered by the tarp was the motorcycle that he had looted him by driving 140 miles an hour. Yes. Right? So he has probable cause to search that motorcycle to find the vehicle identification number, which will tell him the owner of the motorcycle, which will help him arrest the person who committed this crime. Right? Yes. So the case comes down to this. If the motorcycle were parked on the street or maybe further down the driveway and therefore not in the curtilage, they wouldn't need a warrant. They could search it. But because it was parked a few feet further away, although in a spot that's visible from the street, they could search it in the first instance because of the risk that the motorcycle would be taken away. But in the second instance, moved a few feet further up the driveway, still visible from the street, they can't search it because of the additional invasion of privacy that is involved in walking those few feet up the driveway. Yes, Your Honor. That's what the case comes down to. Yes. The protections of the curtilage of the home, which the curtilage, again, is protected as part of the home itself. And for good reason. Officers are prevented from going into the curtilage of a home to prevent them from being, say, in the backyard where there might be a parking area where people are parking, to avoid them, keep them from going into garages and things like that. Did the police have an interest in seizing or securing this motorcycle as soon as possible? No, Your Honor. There's no exigent circumstance in this case. Did the police leave it sit there for a couple days and just get around to it? Isn't this a dangerous item and it was used for a dangerous purpose? And it's the instrumentality and evidence of a crime? Your Honor, it's exactly the same. And it's movable? It's exactly the same as if he had seen something readily movable, like drugs, through the window of a house. He would have to get a warrant for that, and it's the same here. And there are 49 other States and the Federal Government. The Federal Government has just been here and said the home is the core of the Fourth Amendment. No other State is saying this would happen. It's the same as if there were a car, but the car were under repair, all the tires were off the car, and the hood was up, and the engine was taken out. It's the same. No difference. Well, Your Honor, this Court is not, you know, readily mobile can include a car that's wrecked. I mean, at some point maybe it becomes, but readily mobile is not something that's examined on a case-by-case basis. So you think that's irrelevant? It's mobility and it's the ease of moving it. It's irrelevant to this case. That's what you want us to say? It is not any more readily mobile than things that require a warrant, such as illegal drugs. So you want to say that mobility is irrelevant to this case? Yes, I will say that, if I may reserve the balance of my time. Thank you, counsel. Mr. Cox. Mr. Chief Justice, and may it please the Court. Officer Rhodes' search of the motorcycle should be upheld for three reasons. First, the search occurred outside the firm bright line of the house, where the justifications for the automobile exception fully apply. Second, Officer Rhodes had probable cause before he ever stepped foot on the driveway. In your brief, you seem to say that you're not – you don't seem to say. You say you're not taking a position on whether an officer can break into a garage or walk into a garage that's closed but not locked. So you – you seem to be suggesting that the mobility of the automobile, wherever it is, permits the police to enter. Is that by force or without force? This Court has never said that the mobility changes depending on where it is. To resolve this case – Is that a yes to my question? Are you – because that seemed to be what the Virginia – what the Court below was saying, which is where the item is located is irrelevant. If it's an automobile, whether in a garage or the motorcycle parked inside the living room, some people park their bikes inside, actually, it doesn't matter where it is that that gives the police the right to enter and search. The Supreme Court of Virginia did not impose that restriction and this Court has never done that either. We think that it would make sense if the Court were to draw a line here, although it's not necessary. If it were to draw a line, it would make sense to draw it at the firm. Sotomayor, Well, you're saying it's not necessary because the facts don't support it, but does the logic of their holding and your position require that outcome? What – what – how do we – do we basically say, contrary to our rule, that the curtilage is not part of your home? We know it is. That's what we've said in case after case. So we – do we say now the curtilage is not part of the home for purposes of automobiles? And then how do I fit in the line? Sure. There are a couple of things, Bakedon, and let me try to answer them in turn. We don't – we don't read Hardinez and the other Court cases like Oliver as saying that the curtilage in the home should be treated the same for all purposes. For determining one's reasonable expectations of privacy, you might treat the curtilage in the home the same, and that's what Hardinez seemed to suggest. But it's cited to Oliver, you know, one of the curtilage cases, and then in footnote 11 of Oliver, they say, we do not say that the curtilage in the home should be treated the same for all purposes. So while it might be true for determining the reasonable expectations of privacy, it's not binding on – on courts to say what's reasonable and what's not based on whether it's the curtilage or the home. Now, the Supreme Court of Virginia, as I said, did not place a restriction on the automobile exception applying in one place versus another because this Court hasn't done that. If the Court were to draw the line, and I recognize that you're trying to decide a lot of cases here, not just this one, that would be a good place to do it, because that is the firm, bright line that the Court has recognized in a lot of other cases as well. So under that rule, though, police could, as I understand your position, search for cars in garages, closed garages, carports, anywhere on a property, no matter how closely attached or even if firmly attached to the house. No, not everywhere on the premises, Your Honor. Not in the house, but on the curb. Not in the house, but a garage is often considered part of the house. Okay. But if we say that's curtilage, which a lot of cases in the past at least have suggested, and we deem a barn, a garage curtilage, then the police can, without a warrant, search for a car there under your rule, right? If it's not part of the dwelling. If it is part of the dwelling, then no, they could not search it. Not many people live in their garage. Some people do. Some people do. And in barns, but usually they're reserved for cars and for animals.   Correct. Garages are commonly used, Your Honor, for a lot of residential purposes. They might have storage out there, an extra refrigerator. Somebody might be living out there. If the teenager gets too rambunctious, put him out in the garage. I want to ask you two questions. And the first is just to be sure I have the basics right. Yes. Okay. The basics question is a weird hypothetical, but I'm using a weird hypothetical for illustration. The mad art burglar has just stolen the thinker, Rodin's thinker, from the local museum. It weighs 2,000 pounds. And with his confederates, he's put it in his new glass house. And the policeman, stopping on the sidewalk, looks in the window and sees, my God, there it is, the thing he's just stolen. I thought the law is that that policeman cannot go into the house until he gets a warrant. Yes. That's the law. That's my understanding, Your Honor. He should phone a confederate. The thinker is not going to escape. It weighs 2,000 pounds. Unless there are some other exigent circumstances justify it, but under your hypothetical, I don't see why. Okay. Now, the other Hornbook principle is it's not the thinker. It's a wisp, a wispy bit of very suspicious drug smoke. And there, if soon as the smoker, whom he sees in the window or he believes he's off in the side, as soon as he gets an inclination as a policeman around, I'll tell you where all that drug is going to be right down the sink, okay? In that case, he doesn't need a warrant because there's exigent circumstance. Is that right? That's right. All right. And what we don't have in this case is we do not have the exigent circumstance. By definition, you all have ruled that out. Is that correct? I think you do have exigent circumstances. Well, you might have it, but that's not in front of us. That's not why we took the case. That's not what this is about. Right? There is a categorical exigency to automobiles. But now, wait. There are two differences between my example. One, it's curtilage, not house. And, two, it is a movable thing like a police, like a car. Okay. So the question is, it's and, moreover, the policeman didn't know with any certainty, he certainly suspected maybe he had probable cause, but he didn't know that's the right motorcycle. Now, if all those things are true, hypothetically, it's as if, though it's the curtilage, he saw in the middle of the driveway a box. And he thought inside that box there might be a motorcycle or drugs or something. And can he go up without a warrant and without there being exigent circumstances to open the box to look to see if inside there are drugs or a motorcycle? I thought that was this case. And even though, and I think you want to say, yes, he can if it's a motorcycle, but not if it's a box. If it's a big box and carries a motorcycle, like a tarp, you can say yes, you want to say yes. Okay. And I would just wonder why. Why? I mean, it's on the driveway. It's in part of his house. I know that the motorcycle is movable, but there is no exigent circumstance. He wants to look into the box, open the tarp. Why? Does the Fourth Amendment permit that? Okay. Now, it's a long, long question. I just needed the basics. And now I've got to my point. And now I'd like to hear your answer. I'll try to answer it, and I'm sure you'll correct me if I misstate what the hypothetical says. My understanding is that there was a virtual certainty here that this was the same motorcycle under the tarp. So there was not any uncertainty about what was under the box, as it were. The Court to the second part, the Court has also treated other closed containers differently than vehicles. In Ross' case, in Acevedo, they have said containers are different than automobiles because the movability of them is just far greater than the movability of other items. And there was a debate. There were some predecessors of yours on the Court who wanted to suggest that closed containers should be treated the same. There are a couple of justices in Coolidge who thought that was the case. They ended up in the dissent in Ross and certainly in the minority in Acevedo. Mr. Knapp, can I? Roberts, your point was that you understood under the automobile exception for it to have include a categorical exigency aspect. In other words, while it's not the case that you see the guy, you know, revving up the motorcycle about to take off, which would be an exigent circumstance, but you think because you want to extend or apply the automobile exception to stationary vehicles on the, within the curtilage, because you think all the guy has to do is he sees the police officer, he runs out of the house, starts it up, and goes away. Knapp, Yes, Your Honor. I think that's one of the least controversial points in this case, is that because this Court has repeatedly held that a car doesn't actually have to be moving or with somebody there with a key ready to jump on it. Sotomayor, Well, that goes back to my basic question, which is how do I differentiate the car in the garage if, if, if, or the car through a window that you can see? You would say that exigent circumstance, that's what Virginia court appeared to say, that it created an absolute rule, the police can break into anything, go anywhere where they see the car, whether they're at that place legitimately or not. Knapp, Yes, this, this Court has treated it as an absolute rule. Sotomayor, And that's the rule you want us to uphold? Knapp, It, it could. I mean, you could just apply, apply that rule to this case and not make any new law, but if you wanted to. Breyer, And then we should just go ahead and do the same thing for drugs and papers, too, because, and ENTEC, we can overrule ENTEC while we're at it, going all the way back to the founding, because, you know, we could see somebody, they have a fireplace, they have a chimney, they could destroy the papers that we see through the window. Or the drugs, we know that they have indoor plumbing, and so they can be readily destroyed, too. What's the difference between the destruction of drugs and papers in a home and a car in, in the garage? Knapp, So this gets to Justice Sotomayor's question as well. There is a little bit less mobility inside the garage. There's also more expectation of privacy in the garage. Sotomayor, It's a second. The difference between opening a garage door and just walking out and getting into a car is de minimis. You can, you can, you know, it happens just as quickly. And what I just said isn't totally satisfactory, because in McNeely you said you don't really look at the policy justifications behind the categorical exigency. Sotomayor, So if it, if the distinction, and there is no real distinction, why, as Justice Gorsuch suggested, you're asking us to expand the automobile exception dramatically and to basically make an all-time exception forever? Even if the driver, even if the police know that the driver of this car is away on vacation and won't be returning for two weeks, even if they know that, they're not required to go to a magistrate and get a warrant? Knapp, Your Honor, that's been this Court's law for decades, and I wouldn't see it as, as expanding it. Roberts, When I look at the automobile exceptions history and go back to Carroll, it was actually an originalist opinion that looked at cars and analogized them to ships and vessels going all the way back to 1790. And so that's different than homes or curtilage. And, and, and cars are like vessels on the open sea or on port. It never suggested that you can go look for one in a home. That was never the basis. It was, you can search something that is on the open seas or in a harbor or on the streets, not that you can go into a home to find one. That seems to me categorically, a category mistake that you're making in your argument. Can you help me with that? Well, I wouldn't, I wouldn't say it's a mistake in my argument. It would be a mistake maybe in the Supreme Court's jurisprudence not to have limited it to that extent. Well, I just cited the Supreme Court's jurisprudence in Carroll. So I'm not sure it's fair to point the arrow in this direction. Well, Carroll did involve a car that was on the street, but there have been many cases since then, in the 90 years since Carroll, where it's been applied when the car is totally immobile and not on the open road. And so it has been a trajectory of the vehicle exception ever since then. Kagan, Mr. Cox, I mean, one of the things you're saying is that we basically should give, we shouldn't pay attention to the fact that this was on the curtilage. And you said earlier, to a different question, you said, well, you're committed by Jardines to treat the curtilage as the home for purposes of expectation of privacy, but for other purposes, you can make a distinction between the two. And I'd like to know more about that. For what other purposes can you make a distinction between the two, and why can you make a distinction between the two for those purposes when you can't make a distinction between the two for this fundamental question of where you have an expectation of privacy? Sure. Well, certainly Oliver opened the door to that argument, that the Court said we're not saying it's the same for all purposes. And one example that we cited on brief was the difference between Santana and Payton, where you can have a warrantless arrest outside the house, right, even if it's on the front steps, but you can't have one inside because that's just beyond the pale. It's beyond the threshold, beyond the firm, bright line that this Court has drawn.  And that's the answer to my question, which is for what purposes would you treat the curtilage differently from the home, and why there, but not for the reasonable expectation of privacy question? So for what purposes first, and then why? So, you know, you cannot search inside the house without a warrant unless there are exigent circumstances or if there's consent. And that's a line that this Court has drawn, and the automobile exception is also a categorical rule. And so we find them in friction. And so the Court has to decide what's reasonable. Mr. Cox, that's really a simple question. For what purposes would you say that the curtilage is not the house? For purposes of when you have probable cause to search and a warrant exception applies, then you don't treat them the same. And why is that? Why would you treat them – why would you not treat them the same for purposes of when you need a warrant if you do treat them the same for deciding whether there's a reasonable expectation of privacy in them? Well, the Court said in Ross that when the automobile exception applies, you are – you are committed to the same search with the same scope as you would be if you had a warrant. So the only thing that's different is having a warrant. And so as long as the investigating officer sticks to that, as the officer did here, you're not going outside the scope of a warrant. You see, I don't know. Just when I read Jardines, here's what I take it to say. I take it to say the home is the most sacrosanct of places. And actually, we don't think that the home stops at the door. We think that there are some areas, like the porch and like the driveway or whatever, and we can argue about exactly what those areas are. But there are some areas which are just as sacrosanct as your living room. That's what I take Jardines to say. And in that case, I think you lose here. If that's the case, we have a much harder case to make. But I don't think – I don't read Jardines as overruling Santana. I don't read Jardines as creating a knock-and-announce rule at the curtailers. Can you remind me what you said about the enclosed garage with the door? Would that be treated like the home? Yes. Ginsburg. Now, there is a real problem, because you're making a distinction between people who can buy houses with garages and people who are less well-heeled and will have a port or a patio for the car instead of a garage. So that distinction seems to me really troublesome, between garage and carport. I guess what I would say is that the Fourth Amendment protects the same quality of privacy, but maybe not the same quantity of privacy for everyone. I mean, even the Dunn factors realizes that, the Dunn factors incorporate that, if you have enough money to build a huge wall, then that's going to – that's going to impact the analysis of whether that area is protected or not. I mean, there are people who have garages. I don't know why you're – I'm not sure why you are arguing. If I understand your answers to Justice Kagan, you seem to say, okay, let's say the probable cause is based on the fact that you know that the drugs are in, you know, foot-by-foot orange boxes and you see in the carport, you know, foot-by-foot orange boxes, and you seem to be treating that the same as the situation when you have the motorcycle or an automobile. But I thought part of your argument was that the automobiles were inherently different because somebody can just jump on the motorcycle and ride away while they wouldn't have the same mobility issues with respect to the box, the orange boxes. Now, are you arguing – is your argument extend to immobile items in the carport because it's curtilage rather than the house, or is it limited to the mobility that's characterized the automobile exception? Yes. The automobile exception is just that. It's an exception on very circumscribed terms. And then the problem with that, of course, is we've said the curtilage is like the house, and maybe you would. I mean, if you have an automobile in the house, which is not, you know, Jay Leno's house, right, where he's got dozens of rare cars or the Porsche and Ferris Bueller, I mean, you're saying that you don't – you don't – you can just go in because it's mobile and they got it in there somehow. They can get it out. So you don't recognize the distinction between the curtilage and the house for purposes of the vehicles that are mobile? The Court has laid down a categorical exception. If you were to draw a line, we think the most sensible place to do it would be the bright line to the house, because it is used in other Fourth Amendment jurisprudence. It doesn't need to reach that here. There are arguments that the mobility stays the same and the other justifications for the automobile exceptions stay the same, whether it's inside the house or outside the house. But if you need to draw a line, that is a sensible place to do it, not at the curtilage.  I – I – Mr. Cox, you know, the Fourth Amendment says that the people have the right to be secure in their homes, papers, persons, and effects. So in the curtilage – the curtilage issue goes to the question of whether it is a search of the home. If it's not in the curtilage, then it's not a search of the home. The Fourth Amendment doesn't apply. But once you get beyond that, it is a search of the home, the ultimate Fourth Amendment question is always, is it a reasonable search? And that's where we are here. Is it reasonable? It's a balancing of interests. That's what reasonableness meant in – at the end of the 18th century. It's what it means today. And so you have to grapple with the real privacy interests that are involved in the case versus the other considerations, namely the mobility of the automobile. So the question is whether it's reasonable to draw a distinction between an enclosed place like the house or a garage and an open place like a driveway, even if it technically falls within the curtilage. That's correct. And the search that occurred here was very reasonable. It was limited in scope and in order to do that. Sotomayor, you see, the problem I have is that the court below didn't do this. It basically said the absolute rule, not a balancing test. It said you can search any place where a car is, because that's what the automobile exception permits. But that's a very broad statement that would permit the search of the garage or the automobile inside the house. You have a very strong argument, and so would the court below, if it had said given the nature of this driver's reckless illusion of the police previously, exigent circumstances existed in this case, all right, or something like we don't know where the owner is and he could come back immediately and get the car. That's not the analysis the court made. That's true. The court of appeals of Virginia did decide on exigency grounds because Mr. Collins had been alerted to the police's interest in this vehicle. It didn't reach exigency. It said only the automobile exception permits the search of any car no matter where it is in the home. The Supreme Court of Virginia had found that, but the court of appeals of Virginia below them had decided on exigency grounds. Yes, but the Supreme Court, which the court was reviewing. That's right, and they didn't make its own exigency analysis. That is another ground on which we win. We'd rather win on the categorical exception, but we clearly think that there are exigent Well, that would be a question for remand because it wasn't reached by the Virginia Supreme Court. We would be confident if it were remanded that we would prevail on that. Yes, Your Honor. Officer Rhodes had probable cause before he ever stepped foot on the driveway to know that this vehicle was stolen. The Supreme Court of Virginia, in its opinion, had at 15 said that Officer Rhodes had probable cause to believe it was stolen, and there was testimony on the record by Officer Rhodes to support the fact that he did know it was stolen. And Say, if there's probable cause to get a warrant, then you don't need a warrant, and that's the automobile exception. Is there any other exception like that where the test of whether you need, if you have probable cause, forget it, forget the warrant. That's probable cause alone is enough. Well, I think under plain view, you'd have to have some probable cause to believe that what you were seeing was contraband or otherwise evidence of crime. So I think there is some analysis that has to go into knowing that it's Well, the fact that this motorcycle was in plain view, subject to the tarp being on it, was a factor in the decision by the Supreme Court of the State of Virginia, was it not? I thought they relied upon the fact that it was in plain view with the tarp on it. I think that that is mentioned, but I think the probable cause that he, that existed was formed at least in part by the comparison of the photograph on the Facebook page, and when Officer Rose walked up, stood at the end of the driveway, and could see the same thing. But it was in plain view. It was. It's not as if there was a closed garage and they went in to open the garage. That's right. And he wouldn't be able to go up to the edge of the garage, assuming there was curtilage out there, and look in to see if it was in there. The probable cause was formed before he ever stepped foot on the driveway. Mr. Cox, was there one search here or were there two searches here? We submit that there was one search. The search of the motorcycle. That's right. Why is that? Why isn't there the search of the motorcycle, but there is really the search of the curtilage? It happened to be for the motorcycle, but it's the search of the curtilage. It's a different search entirely. We look at it as one search because it's the object of the search that you are entitled to search, whether it's under a warrant or one under a warrant exception. And you look at it by, you know, it's not a separate search for each access point that you go to. You wouldn't have gotten two warrants if you had gone to a magistrate. You wouldn't get a warrant to search the motorcycle and then another warrant to actually cross the driveway to get there. So we see it as one search for that reason. Does that mean you, without a warrant, that you always have access to a place if there's a reason that you can seize something that you might find within the place? I'm hesitant to speak beyond the automobile exception, but I think the automobile exception would give you that ability, unless there was some other rule that prevented you from doing it, such as a rule that the automobile exception doesn't apply in the house. And I'll say that, to go back to Justice Gorsuch's questions about the original understanding of this, all along the justifications for the vehicle exception have been based in the contradistinction between vehicles and houses or dwellings. At first it was the difference in mobility, but then later in cases like Cady and Cardwell and Kearney, they also speak of the reduced expectations of privacy that you have in a vehicle as compared to a fixed dwelling or a building. So if the Court were to draw a line, it would certainly have some healthy pedigree in the Court's previous decisions. Unless there are further questions. Thank you. Thank you, Mr. Cox. Mr. Fitzgerald, four minutes remaining. Thank you. Just a few points in rebuttal here. So the curtilage is protected as part of the home. And if we look back, historically speaking, the automobile exception is born at a traffic stop in the 1920s. The automobile exception, as it is created, makes sense in that context. But the automobile exception has grown. It's become a categorical exception. We no longer look for exigency on a case-by-case basis. And now the automobile exception is literally knocking at the door of the house. And the question is whether to apply this exception created based on exigent circumstances in 1925 to a search of the curtilage of a home. And now on the State's argument, even their backup argument, even what they give up, there easily could have been probable cause to think that this motorcycle was at this residence if it were around behind the house, if the driveway went just a little bit farther. And it should not be that searching for an automobile or what might be in an automobile would get police around a house like that, around to the back door, where there might be, in this case, the side door, a sliding door, where if you're standing where this motorcycle is, you can see directly into the side door of the house. And you can see this just a little bit at the petition appendix, page 112. The curtilage is an area that is intimately linked to the home. This court said in Jardines as well as in Serrallo, it's intimately linked to the home both physically and psychologically, and it's where expectations of privacy are most heightened. We submit that the clear bright line rule for officers, which is that when they go to a known address to look for contraband, even readily mobile contraband, they bring a warrant with them, should apply when they're going to a known address to look for a vehicle as well. And if there are no further questions, respectfully ask this court to reverse. Thank you, counsel. Case is submitted.